**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**Trenton Division**

**BARBARA WESTOVER and DARL WESTOVER, JR., H/W,**

Plaintiffs

v.

**AMERICAN INTERNATIONAL INDUSTRIES,** individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products;

**BARRETTS MINERALS, INC.;**

**BRENNTAG NORTH AMERICA,** as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in interest to Whittaker, Clark & Daniels, Inc.;

**BRENNTAG SPECIALTIES, INC.,** f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.;

**MINERALS TECHNOLOGIES INC.;**

**PFIZER, INC.;**

**SPECIALTY MINERALS, INC.;**

**WHITTAKER CLARK & DANIELS, INC.;**

**Case No. _____________**

**NOTICE OF REMOVAL OF CLAIMS AGAINST DEFENDANT AMERICAN INTERNATIONAL INDUSTRIES**

**JURY TRIAL DEMANDED**

Originally filed in the Superior Court of New Jersey Law Division Middlesex County
Docket No. MID-L-003011-22 AS

Related Cases:
Chapter 11
In re: BMI OLDCO IN., et al.
Bankruptcy Case No. 23-90794 (MI)

District Court Civil Action No. 4:25-cv-02193 (CGH)
Southern District of Texas

Pending Motion:
Motion to Transfer and Fix Venue in the USDC-Southern District of Texas

**BRISTOL MYERS SQUIB,** Individually and as Successor in Interest to Charles of the Ritz and Jean Nate;
**BLOCK DRUG COMPANY, INC.;**

**BLOCK DRUG CORPORATION;**

**CHARLES B. CHRYSTAL COMPANY, INC.;**

**CHATTEM, INC.,** sued individually and as successor-in-interest to MARTIN HIMMEL, INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**GLAXOSMITHKLINE, LLC,** individually and as successor-in-interest to BLOCK DRUG COMPANY;

**HIMMEL MANAGEMENT CO. LLC,** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**STEPHAN CO.,** individually and as successor-in-interest to OLD 97 COMPANY;

**JANSSEN PHARMACEUTICALS, INC.,** individually and as successor in interest to Johnson & Johnson Consumer, Inc.;

**JOHNSON & JOHNSON;**

**JOHNSON & JOHNSON CONSUMER, INC.;**

**JOHNSON & JOHNSON HOLDCO (NA) INC.;**

**KENVUE INC.,** individually and as successor in interest to Johnson & Johnson Consumer, Inc.;

**LTL MANAGEMENT, LLC;**

**GOLD BOND CO. LLC**, individually and as successor-in-interest to Chattem, Inc., individually and as successor-in-interest to MARTIN HIMMEL INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION

**MARTIN HIMMEL INC**., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-

interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**and JOHN DOE CORPORATIONS, 1-50**

Defendants.

Defendant AMERICAN INTERNATIONAL INDUSTRIES ("A-I-I") (sued individually and erroneously as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products), hereby removes the claims against A-I-I in this matter (the "**Talc Claims**") from the Superior Court of New Jersey for Middlesex County to the United States District Court for the District of New Jersey, Trenton Division, pursuant to 28 U.S.C. §§ 1334(b) and 1452 and Federal Rule of Bankruptcy Procedure 9027.

The grounds for removal are that the claims against A-I-I are related to the bankruptcy of the sole supplier to A-I-I of the pharmaceutical grade talc used in A-I-I's Clubman Talcum Powder, which Plaintiff Barbara Westover alleges caused her harm. The federal district court overseeing Barretts Minerals, Inc.'s ("BMI")

Chapter 11 bankruptcy cases[1] (the "**Bankruptcy Case**") has ordered a science trial to decide the threshold issue of general causation including whether BMI talc "contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases." BMI provided A-I-I a written express warranty that the pharmaceutical grade talc it supplied conformed to current USP [United States Pharmacopeia] Monograph requirements for talc and was free of "regulated" or "detectable" asbestiform minerals.[2] As explained more fully below, the claims against A-I-I are related to the threshold determination that will be made in the Bankruptcy Case, will otherwise impact that proceeding, and should be in federal court.

## BACKGROUND

1. On July 6, 2022, Plaintiffs Barbara Westover and Darl Westover, Jr. filed their lawsuit in the Superior Court of New Jersey Law Division, Middlesex County. The case is not yet set for trial. The Westover's Proof of Claim in the Bankruptcy Case is listed as Schedule No. 2630485.

[1] The debtors in *In re BMI Oldco, Inc., et al*., Bankruptcy Case No. 23-90794 (MI), along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) ("BMI") (8715) and Barretts Ventures Texas LLC (0787). The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

[2] *See* Exhibits 11-12 to A-I-I's Motion to Transfer and Fix Venue, which is attached as Exhibit A hereto.

2. On October 2, 2023, BMI sought Chapter 11 protection in the United States Bankruptcy Court for the Southern District of Texas as a result of claims alleging that its talc caused personal injury and wrongful death. BMI was a talc miner and manufacturer; it did not make finished consumer products. As a downstream blender of a product made exclusively with talc supplied by BMI, A-I-I is routinely named as a co-defendant in the same lawsuits that gave rise to BMI's bankruptcy. The claims against A-I-I (all based on consumer use of Clubman Talcum Powder) are, in essence, claims against BMI talc. The Talc Claims are related to BMI's bankruptcy because the adjudication of such claims will affect any valuation of the estate and proposed reorganization plan.

3. A-I-I filed its Proof of Claim in the Bankruptcy Case on May 6, 2024,[3] asserting broad contractual and equitable rights of warranty, indemnity, and reimbursement relating to the talc BMI supplied to A-I-I with written assurances that, among others, the "product conforms to current USP [United States Pharmacopeia] Monograph requirements for talc" and is free of "regulated" or "detectable" asbestiform minerals.[4]

---

[3] *See* Exhibit 10 to A-I-I's Motion to Transfer and Fix Venue, which is attached as Exhibit A hereto.

[4] *See* Exhibits 11-12 to A-I-I's Motion to Transfer and Fix Venue, which is attached as Exhibit A hereto.

4. On May 14, 2025, the Bankruptcy Court issued its Abatement Order and Report and Recommendation ("**AORR**") to withdraw the reference so the district court could resolve the question of "whether any of the talc sold by [BMI] contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases" (the "**Referred Question**"). Bankr. Dkt. No. 1479,[5] SDTX Dkt. No. 1.[6]

5. A-I-I initially moved to intervene pursuant to Bankruptcy Rule 2018 and the AORR on July 17, 2025. SDTX Dkt. No. 8. On March 18, 2026, District Judge George C. Hanks of the Southern District of Texas denied A-I-I's motion as premature but stated: "[A-I-I] may reassert its motion to intervene if the Court decides to accept Judge Isgur's report and recommendation." SDTX Dkt. No. 39.

6. On June 22, 2026, District Judge Hanks accepted and adopted Bankruptcy Judge Isgur's AORR. SDTX Dkt. No. 42.

7. On July 1, 2026, A-I-I renewed its motion to intervene. SDTX Dkt. No. 46. Recognizing A-I-I's direct stake in the resolution of the common causation issues, on August 4, 2026, District Judge Hanks granted A-I-I's motion and authorized its participation in the general causation proceeding, holding that A-

[5] References to the docket in the Bankruptcy Case proceedings before Judge Isgur will be identified as "Bankr. Dkt. No. ___." The AORR is Bankr. Dkt. No. 1479.

[6] References to the docket in the District Court proceedings before Judge Hanks will be identified as "SDTX Dkt. No. ___."

I-I is a party-in-interest pursuant to 11 U.S.C. § 1109(b) and Federal Rule of Bankruptcy Procedure 2018, broad participation is intended in this matter, and it would serve the interests of justice for A-I-I to fully participate. SDTX Dkt. No. 84.

8. On September 2, 2026, A-I-I filed a Motion to Transfer and Fix Venue for Claims Related to BMI's Chapter 11 Bankruptcy under 28 U.S.C. §§ 157(b)(5) and 1334(b) in the United States District Court for the Southern District of Texas, Houston Division (the "**Venue Motion**"). The Venue Motion and supporting papers are attached as **Exhibit A**. These Talc Claims against A-I-I are among those A-I-I seeks to transfer and consolidate in the Southern District of Texas, where the Referred Question and Bankruptcy Case are currently pending.

9. 28 U.S.C. § 157(b)(5) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending. (emphasis added).

10. The Legislature created Section 157(b)(5) to centralize the adjudication of claims, and the express language of the statute confers the authority to determine the proper venue for trial of this action on the Southern District of Texas. *See e.g., A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (affirming centralization of thousands of state and federal personal injury cases against debtors and non-debtor co-defendants in the district court where a bankruptcy was pending,

finding "Section 157(b)(5) . . . expressly confers on the district court sitting in bankruptcy and having jurisdiction of the bankruptcy proceedings the power to fix the venue of any tort case against the debtor pending in other districts."); *Whittingham v. CLC of Laurel, LLC*, 2006 WL 2423104, at *1 (S.D. Miss. Aug. 22, 2006) ("[T]he ultimate venue of the trial in the personal injury case should be determined by the District Court where the Bankruptcy Case is pending."); *see also* 1 *Collier on Bankruptcy* ¶ 3.06 (16th ed. 2025) ("Section 157(b)(5) provides that the venue of the [personal injury tort and wrongful death] trial is to be determined by the district court in which the title 11 case is pending. This unusual, perhaps unique, provision empowers a court other than that in which the litigation is pending to decide where the trial is to take place. The court in which the title 11 case is pending has the options of trying the case itself or directing that the trial occur in the district court for the district in which the claim arose.").

11. Given the pendency of the Venue Motion, it would be appropriate for this Court to administratively transfer or defer to the Southern District of Texas to rule on A-I-I's Motion to Transfer and Fix Venue. That court has the ultimate power to determine venue of personal injury and wrongful death claims related to the bankruptcy estate as well as procedural motions that might have an impact on those cases. *See Calumet Nat'l Bank v. Levine*, 179 B.R. 117, 122 (N.D. Ind. 1995) ("Under section 157(b)(5), the district court for the bankruptcy district has sole

authority for ultimately fixing venue for [personal injury tort/wrongful death] actions against bankruptcy debtors."). This Court should accordingly stay or defer consideration of any motion for remand or abstention pending the Southern District of Texas' venue determination.[7] *See id*. at 123 (court stayed all proceedings while debtor-defendant pursued section 157(b)(5) motion and deferred ruling on pending motions).

## GROUNDS FOR REMOVAL

### A. A-I-I Is a Party Permitted to Remove under 28 U.S.C. § 1452(a).

12. A party "may remove any claim or cause of action in a civil action….to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

13. Section 1452(a) allows removal by "a party"—it is not limited to the debtor or trustee. A-I-I qualifies as a party because it is a named defendant in this action, an interested party in the Bankruptcy Case, and, as of August 4, 2026, a formal intervenor in the Southern District of Texas' general causation proceeding. Judge Hanks' August 4, 2026, intervention order was the first order conferring upon

[7] The Southern District of Texas may exercise its powers under 28 U.S.C. § 157(b)(5) to transfer and fix venue for the Talc Claims even if this Court remands A-I-I's claims.

A-I-I formal party status in the proceeding addressing causation issues central to both the Talc Claims and the Bankruptcy Case.

14. Although no court appears to have addressed when the Rule 9027 removal clock begins (where a creditor claimant's right to remove ripens only upon intervention in a withdrawn-reference proceeding), A-I-I's position is a natural extension of the ascertainability principles reflected in 28 U.S.C. § 1446(b)(3) and incorporated into Rule 9027 through its text and Advisory Committee Notes.[8] The August 4, 2026, intervention order was the first order from which A-I-I could ascertain both its status as a party and its corresponding right to remove, thereby triggering the 30-day removal period.

### B. This Court Has Subject Matter Jurisdiction under 28 U.S.C. § 1334(b) Because the Talc Claims Against A-I-I Are "related to" the Bankruptcy Case.

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), which provides that the district courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in

[8] Bankruptcy Rule 9027 is expressly modeled on the general removal statute. Fed. R. Bankr. P. 9027 advisory committee's note to 1983 amendment. Under 28 U.S.C. § 1446(b)(3), where the initial pleading is not removable, the notice may be filed within 30 days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." This provision recognizes that removability is not always apparent at the outset of litigation—circumstances may change, and a case that was not removable when filed may become removable through subsequent events.

or related to cases under title 11." This action is "related to" *In re BMI Oldco, Inc.*, Bankruptcy Case No. 23-90794, the Chapter 11 reorganization case currently pending in the United States Bankruptcy Court for the Southern District of Texas.

16. The United States Supreme Court has endorsed the test for "related to" jurisdiction first articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984): a civil proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 & n.6 (1995) (emphasis added).[9] The proceeding "need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994.

17. Because A-I-I filed its Motion to Transfer and Fix Venue in the Southern District of Texas, Fifth Circuit authority is also instructive. The Fifth Circuit first adopted the *Pacor* "conceivable effects" test in *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). *See In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015). "'Related to' subject matter jurisdiction includes any litigation where the outcome

[9] The Supreme Court confirmed in *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995), that the "First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the Third Circuit's *Pacor* test with little or no variation."

could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankrupt estate.'" *Id*. (internal citations omitted). The Fifth Circuit has reaffirmed this broad pre-confirmation standard in subsequent decisions. *See, e.g.*, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386 (5th Cir. 2010); *In re TXNB Int. Case*, 483 F.3d 292, 298 (5th Cir. 2007); *In re Canion*, 196 F.3d 579, 585–87 (5th Cir. 1999); *In re Walker*, 51 F.3d 562, 569–70 (5th Cir. 1995).

18. Critically, in the mass tort products liability context, the Fifth Circuit recognized in *Arnold v. Garlock Inc.*, 278 F.3d 426, 440 n.12 (2001), that the absence of "related to" jurisdiction in that case did not mean such jurisdiction can *never* extend to nondebtor defendants in mass tort litigation. To the contrary, the court rejected the categorical view advanced by some commentators and instead distinguished the facts before it from those in *A.H. Robins* and *In re Dow Corning*, 86 F.3d 482 (6th Cir. 1996), where an identity of interests between the debtor and nondebtor defendants supported bankruptcy-related jurisdiction and consolidation of mass tort claims in a single district. *Garlock*, 278 F.3d at 440. The Fifth Circuit explained that courts considering transfer and consolidation under section 157(b)(5) should "balance each case individually … for the relationship or unity of identity of the co-defendants and the debtor(s), the uniformity of source of the injury or

wrongful death, and the general status of pending cases in the state courts and the effect a consolidation would have on them." *Id*. at 440 n.12.

19. As the Fifth Circuit in *Garlock* pointed out, the relevant non-debtors and debtor in *Dow Corning* were "closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially the same injuries." *Id*. at 440. The same is true here: BMI supplied 100% of the talc that A-I-I blended into its Clubman product. The claims against A-I-I arise exclusively from the talc BMI supplied, and the injuries at issue in this case are the same as those alleged in the Bankruptcy Case—asbestos-related disease.

20. A-I-I is defending BMI talc and should do so in the general causation proceeding in connection with the Bankruptcy Case. BMI supplied a written warranty that its talc conformed to the requirements of the USP Monograph on Talc.[10] *See* Tex. Bus. & Com. Code § 2.313(a) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") Whether it breached that warranty is ripe now and should

[10] *See* Exhibits 11-12 to A-I-I's Motion to Transfer and Fix Venue, which is attached as Exhibit A hereto.

be decided in connection with BMI's bankruptcy (because it cannot be determined as to BMI anywhere else).

### A. Talc Claimants Concede That This Case Is Related to the BMI Bankruptcy.

21. The Unsecured Creditors Committee ("**UCC**") and Future Claimants' Representative ("**FCR**") in the Bankruptcy Case have repeatedly urged that, e.g., "[w]hile BMI has settled a handful of talc claims against it, no talc claim against BMI has yet gone to verdict. Juries have, however, awarded significant verdicts against various defendants for talc claims." SDTX Dkt. No. 4, at 13 n.40 (UCC's Objection & Response to AORR). Rather than advocating for a single proceeding to determine general causation, claimants have argued that trial-ready tort actions should proceed in state courts and serve as benchmarks for evaluating talc liability and valuing claims against the bankruptcy estate. In doing so, claimants urged the Bankruptcy Court to look to state court verdicts as some measure of general causation. Those arguments were made exhaustively to try to prevent the District Court from agreeing to withdraw the reference to Bankruptcy Court and adjudicate the threshold issue of whether BMI's talc contained asbestos. Judge Hanks declined the invitation to try to divine common intent from a patchwork of state court verdicts and decided to address the threshold issue of asbestos contamination in one proceeding.

22. The general causation issue germane to this case should be decided by the Southern District of Texas in the pending general causation proceeding. If—as talc claimants assert—state court verdicts impact the bankruptcy estate by setting a value on a claim and supposedly deciding general causation, then the cases are necessarily related. That "related to" concession justifies removal under § 1334(b).

**B. The Talc Claims Against A-I-I, and the BMI Bankruptcy Proceedings, Turn on the Same General Causation Question concerning BMI Talc.**

23. The withdrawn-reference general causation proceeding was established precisely because of its significance to the administration of the Chapter 11 cases and the treatment of talc-related claims. Prior to issuing the AORR, Bankruptcy Judge Isgur stated, at an April 15, 2025, Hearing, "I don't think that its very helpful to do an estimation process until we are aware of the magnitude of the proceeds that could be distributed [depending on whether or not asbestos was in BMI talc] . . . And right now, I don't think in the plan we have any idea of that magnitude." *See* Bankr. Dkt. No. 1415, at 115:22–25, 116:1.

**i. Plaintiffs' allegations implicate A-I-I's warranty claims that have direct, conceivable effects on the bankruptcy estate.**

24. Plaintiffs allege that products containing BMI-supplied talc failed to conform to representations concerning their safety and condition. Those allegations directly implicate A-I-I's warranty-based rights against BMI. Unlike a speculative

future claim for contribution, A-I-I's warranty-related rights arise from the same allegations asserted in this action and, therefore, create a direct connection between the Talc Claims against A-I-I and the Bankruptcy Case.

25. Although A-I-I has submitted its Proof of Claim in the Bankruptcy Case, the significance of those rights increased substantially once the Southern District of Texas established a proceeding expressly designed to determine whether BMI talc was capable of causing disease. Any determination concerning the quality, condition, or alleged defectiveness of BMI talc has the potential to affect the scope, value, and treatment of claims asserted against the estate. Accordingly, adjudication of the Talc Claims could alter the estate's liabilities and affect the rights of creditors and other parties in interest.

**C. Centralized Adjudication Is Necessary to Avoid Duplicative Estate Exposure and to Protect the Reorganization Process.**

26. Permitting the same general causation issues to proceed simultaneously in multiple forums creates a substantial risk of inconsistent factual determinations. Assuming arguendo, a state court jury could conclude that BMI talc was capable of causing disease while the federal proceeding reaches a different conclusion on the same question. Such conflicting determinations would undermine the orderly administration of the Chapter 11 reorganization and create uncertainty concerning the valuation and treatment of claims against the bankruptcy estate.

27. The risk is especially acute because claimants have expressly argued that state-court verdicts and rulings should inform the Bankruptcy Court's resolution of talc-related issues. Yet, BMI remains subject to the automatic stay and is generally unable to participate in the defense of those actions. Claimants thus seek to rely on determinations generated in proceedings in which the bankruptcy estate has no meaningful opportunity to defend its interests. Moreover, favorable state court rulings may be cited as persuasive evidence in the bankruptcy proceedings while unfavorable rulings may be discounted or ignored. Centralized adjudication avoids this asymmetry and ensures that issues affecting creditors' rights are decided in a single proceeding where all interested parties have an opportunity to be heard.

28. The harm to the Chapter 11 reorganization process extends beyond the risk of inconsistent findings. Permitting parallel litigation subjects the bankruptcy estate to duplicative exposure and interferes with its equitable administration. For example, the Westover plaintiffs have asserted claims directly against the bankruptcy estate through the Chapter 11 claims process while simultaneously pursuing the same alleged injuries against A-I-I in this action.

29. Absent centralized adjudication, the same underlying allegations asserted by personal injury talc claimants like the Westovers may therefore affect the bankruptcy estate through multiple avenues: directly through proofs of claim asserted against the estate and indirectly through warranty, indemnity, and/or

contribution claims asserted by A-I-I. The result is a substantial risk that the value, treatment, and administration of claims against the estate will be influenced by parallel proceedings addressing identical issues. *See KSRP, Ltd.*, 809 F.3d at 266. Centralized adjudication is necessary because the outcome of the Talc Claims against A-I-I will conceivably have a direct effect on creditor and claimant recoveries, estate liabilities, and the plan-confirmation process.

## PROCEDURAL REQUIREMENTS

30. Removal of the Talc Claims against A-I-I is authorized by 28 U.S.C. §§ 1334 and 1452. Removal is being accomplished in accordance with Federal Rule of Bankruptcy Procedure 9027 as well as the Local Bankruptcy Rules ("**LBR**") and Local Civil Rules ("**LCR**") of this Court.

31. The state court is located in the division and district of this Court. Fed. R. Bankr. P. 9027(a)(1). This Notice is being filed with the clerk of the District Court.

32. This Notice contains a short and plain statement of facts entitling A-I-I to remove the Talc Claims. *See supra* ¶¶ 1–15; Fed. R. Bankr. P. 9027(a)(1)(A).

33. Bankruptcy Rule 9027(a)(1)(B) requires that this Notice of Removal "contain a statement that upon removal of the claim or cause of action the party filing the notice does or does not consent to entry of final order or judgment by the bankruptcy court." A-I-I states that it does not consent to the entry of final orders or

judgments by the Bankruptcy Court. Rather, through its Venue Motion, A-I-I requests that the Southern District of Texas fix venue for the Talc Claims in the District Court for the Southern District of Texas.

34. Bankruptcy Rule 9027(a)(1)(C) further requires that this Notice of Removal "be accompanied by a copy of all process and pleadings." A copy of the operative complaint is attached as **Exhibit B**. A-I-I's answer with jury demand is attached as **Exhibit C**. A copy of the state court docket is attached as **Exhibit D**. A list of all parties and their counsel is attached as Exhibit **E**. A-I-I will make available any pleadings upon request but asks that this Court extend the deadline to transmit the full state court record until the Southern District of Texas issues a decision on A-I-I's motion to transfer and fix venue. *Cf. A.H. Robins Co.*, 788 F.2d at 1016 n.18 ("Until the [venue-fixing] order is made final with regard to a particular case, a case should not be physically transferred. Thus, no filing fee shall be paid under Rule 9027 or expenditures accompany photocopying, freight, etc. be made. Only after the order is final shall the expense of transfer be necessary.").

35. This Notice is timely. As discussed above, the direct jurisdictional nexus between the Talc Claims against A-I-I and the Bankruptcy Case became ascertainable only after creation of the general causation proceeding and, at the latest, upon entry of the August 4, 2026, intervention order, which was the first order recognizing A-I-I as a formal party to the science trial in the Southern District of

Texas. The district court considered A-I-I's participation premature until August 4, 2026 (SDTX Dkt. No. 39); thus, no removal clock can fairly run against A-I-I before that date. A-I-I's 28 U.S.C. § 1334(b) nexus and, accordingly, its ability to remove, arose only when the District Court granted its renewed motion to intervene.

36. In accordance with Bankruptcy Rule 9027(b), A-I-I will promptly serve written notice of this removal to all parties by filing this Notice of Removal in the state court.

37. All parties are **HEREBY NOTIFIED** that removal of the claims against A-I-I will be effected upon the filing of a copy of this Notice of Removal with the clerk of the state court pursuant to Bankruptcy Rule 9027(c), and "the parties shall proceed no further in that court unless and until the claim or cause of action is remanded." Fed. R. Bankr. P. 9027(c).

38. No admission of law, fact, or liability is intended by this Notice of Removal. Nor does this Notice of Removal waive any defense available to A-I-I.

39. If any question is raised as to the propriety of the removal of the claims against A-I-I, A-I-I requests the opportunity to present a brief and oral argument in support of removal.

**WHEREFORE**, A-I-I respectfully gives notice that the claims against AMERICAN INTERNATIONAL INDUSTRIES are removed from the Superior Court of New Jersey for Middlesex County, Case No. L-003011-22 AS, to the

United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1334, 1452(a) and Federal Rule of Bankruptcy Procedure 9027.

Dated: September 3, 2026

Respectfully submitted,

By: /s/ *Roy Viola, Jr.*
ROY VIOLA, JR.

**GORDON REES SCULLY MANSUKHANI**
Attorneys for Defendant
American International Industries
290 West Mount Pleasant Avenue, Suite 3310
Livingston, NJ 07039
Telephone: (973) 549-2500
Facsimile: (973) 377-1911
Email: rviola@grsm.com

**DEMAND FOR JURY TRIAL**

On this 3rd day of September 2026, Defendant American International Industries hereby demands trial by jury in this action.

Dated: September 3, 2026

Respectfully submitted,

By: /s/ *Roy Viola, Jr.*
ROY VIOLA, JR.

**GORDON REES SCULLY MANSUKHANI**
Attorneys for Defendant
American International Industries
290 West Mount Pleasant Avenue, Suite 3310
Livingston, NJ 07039
Telephone: (973) 549-2500
Facsimile: (973) 377-1911
Email: rviola@grsm.com

**CERTIFICATE OF SERVICE**

On this 3rd day of September 2026, the undersigned counsel for Defendant hereby certifies that a true and correct copy of the foregoing document was filed with the Court and served electronically through the CM-ECF (Electronic Case Filing) system to all counsel of record registered to receive a Notice of Electronic Filing.

*/s/ Roy F. Viola, Jr.* ___________
Roy F. Viola, Jr.