# EXHIBIT B

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Michelle Murtha, Esq.
ID #: 065012013
Erin M. Boyle, Esq.
ID#: 312672020
220 Lake Drive East, Suite 210
Cherry Hill, NJ 08002
(856) 755-1115
Attorneys for Plaintiffs

| | |
|---|---|
| **BARBARA WESTOVER and DARL WESTOVER, JR., H/W,**<br><br>**Plaintiffs**<br>**vs.**<br><br>**AMERICAN INTERNATIONAL INDUSTRIES,** individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products;<br><br>**BARRETTS MINERALS, INC.;**<br><br>**BRENNTAG NORTH AMERICA,** as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in interest to Whittaker, Clark & Daniels, Inc.;<br><br>**BRENNTAG SPECIALTIES, INC.,** f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.;<br><br>**MINERALS TECHNOLOGIES INC.;**<br><br>**PFIZER, INC.;**<br><br>**SPECIALTY MINERALS, INC.;**<br><br>**WHITTAKER CLARK & DANIELS, INC.;** | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION MIDDLESEX COUNTY**<br><br>**DOCKET NO. L-003011-22 AS**<br><br>**CIVIL ACTION (ASBESTOS LITIGATION)**<br><br>**FOURTH AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

**BRISTOL MYERS SQUIB,** Individually and as Successor in Interest to Charles of the Ritz and Jean Nate;

**BLOCK DRUG COMPANY, INC.;**

**BLOCK DRUG CORPORATION;**

**CHARLES B. CHRYSTAL COMPANY, INC.;**

**CHATTEM, INC.,** sued individually and as successor-in-interest to MARTIN HIMMEL, INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**GLAXOSMITHKLINE, LLC,** individually and as successor-in-interest to BLOCK DRUG COMPANY;

**HIMMEL MANAGEMENT CO. LLC,** a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**STEPHAN CO.,** individually and as successor-in-interest to OLD 97 COMPANY;

**JANSSEN PHARMACEUTICALS, INC.,** individually and as successor in interest to Johnson & Johnson Consumer, Inc.;

**JOHNSON & JOHNSON;**

**JOHNSON & JOHNSON CONSUMER, INC.;**

**JOHNSON & JOHNSON HOLDCO (NA) INC.;**

**KENVUE INC.,** individually and as successor in interest to Johnson & Johnson Consumer, Inc.;

**LTL MANAGEMENT, LLC;**

**GOLD BOND CO. LLC**, individually and as successor-in-interest to Chattem, Inc., individually and as successor-in-interest to MARTIN HIMMEL INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION

**MARTIN HIMMEL INC**., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION;

**and JOHN DOE CORPORATIONS, 1-50**

**Defendants.**

Plaintiffs Barbara Westover and Darl Westover, Jr. by way of Complaint against the Defendants named herein, allege as follows:[1]

**PLAINTIFFS-PARTIES**

1. Plaintiffs Barbara Westover and Darl Westover, Jr. reside at 37 Jacksonburg Road, Blairstown, County of Warren, State of New Jersey 07825.

[1] In addition to the allegations set forth herein, Plaintiffs adopt and incorporate by reference the Standard Complaint against Defendants Kenvue Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson Holdco (NA) Inc. filed on June 20, 2023, in the Superior Court of New Jersey, Middlesex County, Trans ID: LCV20231842063.

2. Plaintiff Darl Westover, Jr. (also referred to in this Complaint as Plaintiff Spouse) is the spouse of Plaintiff Barbara Westover.

3. From approximately 1978 to 1995, Plaintiff, Barbara Westover was regularly and frequently exposed to asbestos by her personal use of Jean Nate talc powder. From approximately 1988 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her personal use of Gold Bond Body Powder in New Jersey. Moreover, from approximately 1988 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her husband's use of Gold Bond Body Powder in her presence. From approximately 1975 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her personal use of Johnson's Baby Powder and/or Shower to Shower in New Jersey. Additionally, from approximately 1995 to 2005, Plaintiff was regularly and frequently exposed to asbestos by her use of Johnson's Baby Powder on her two children after diaper changes and/or baths. Moreover, from approximately 1988 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her husband's use of Johnson's Baby Powder in her presence. From approximately 1996 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her personal use of Clubman talc powder in New Jersey. Additionally, from approximately 1996 to 2005, Plaintiff was regularly and frequently exposed to asbestos by her use of Clubman talc powder on her children and during their haircuts. Moreover, from approximately 2005 to 2022, Plaintiff was regularly and frequently exposed to asbestos by her children's use of Clubman talc powder in her presence.

4. As a direct and proximate result of the above exposures, Plaintiff Barbara Westover contracted mesothelioma and has suffered, and continues to suffer, from other various diverse injuries and attendant complications.

5. Plaintiff Barbara Westover was caused to suffer severe, permanent and disabling personal injury, has expended and will be caused to expend sums of money for medical care and treatment, therefore, has been prevented and will be prevented from pursuing normal activities and employment, has experienced and will continue to experience severe pain and suffering and mental anguish, and has been deprived and will continue to be deprived of ordinary pursuits and enjoyments of life.

6. Reference herein to "Plaintiff" or "Plaintiffs" is a reference to all the persons set forth above as is syntactically and contextually correct.

**PARTIES – DEFENDANTS**

7. Defendants are corporations organized under the laws of New Jersey and/or various states of the United States of America that were and are doing business in the State of New Jersey. The aforementioned Defendants mined, milled, designed, manufactured, sold, supplied, purchased and/or marketed asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or asbestos fiber of various kinds and grades which Plaintiff was exposed.

8. Defendants AMERICAN INTERNATIONAL INDUSTRIES, individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed Pinaud, Inc. d/b/a Ed Pinaud, The Nestle-Le Mur Company, The Neslemur Company, The Neslemur-Company, for the Clubman line of products; BARRETTS MINERALS, INC.; BRENNTAG NORTH AMERICA, as a successor-in-interest to Mineral Pigment Solutions, Inc., as a successor-in interest to Whittaker, Clark & Daniels, Inc.; BRENNTAG SPECIALTIES, INC., f/k/a Mineral Pigment Solutions, Inc., as a successor-in-interest to Whittaker, Clark & Daniels, Inc.; MINERALS TECHNOLOGIES INC.; PFIZER, INC.; SPECIALTY MINERALS, INC.; WHITTAKER CLARK & DANIELS, INC.; BRISTOL

MYERS SQUIB, Individually and as Successor in Interest to Charles of the Ritz and Jean Nate; BLOCK DRUG COMPANY, INC.; BLOCK DRUG CORPORATION; CHARLES B. CHRYSTAL COMPANY, INC.; CHATTEM, INC., sued individually and as successor-in-interest to MARTIN HIMMEL, INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION; GLAXOSMITHKLINE, LLC, individually and as successor-in-interest to BLOCK DRUG COMPANY; HIMMEL MANAGEMENT CO. LLC a/k/a HIMMEL GROUP formerly d/b/a MARTIN HIMMEL, INC., individually and as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION; STEPHAN CO., individually and as successor-in-interest to OLD 97 COMPANY; JANSSEN PHARMACEUTICALS, INC., individually and as successor in interest to Johnson & Johnson Consumer, Inc.; JOHNSON & JOHNSON; JOHNSON & JOHNSON CONSUMER, INC.; JOHNSON & JOHNSON HOLDCO (NA) INC.; KENVUE INC., individually and as successor in interest to Johnson & Johnson Consumer, Inc; and LTL MANAGEMENT, LLC; GOLD BOND CO. LLC, individually and as successor-in-interest to Chattem, Inc., individually and as successor-in-interest to MARTIN HIMMEL INC., successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION; and MARTIN HIMMEL INC., individually and

as successor-in-interest to BLOCK DRUG CORPORATION, successor-in-interest to BLOCK DRUG COMPANY, successor-in-interest to THE GOLD BOND STERILIZING POWDER COMPANY a/k/a THE GOLD BOND COMPANY, successor-in-interest to GOLD BOND PHARMACEUTICAL CORPORATION are corporations or other business entities organized under the laws of one or more states of the United States of America and doing business in New Jersey.

9. Defendants JOHN DOE CORPORATIONS, 1-50 are the fictitious names or corporations, Partnerships, and/or other business entities whose identities are not presently known, and who are the alter egos of or are otherwise responsible for the conduct of liability of those who mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos-containing products, and/or equipment requiring and/or calling for the use of asbestos and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or raw asbestos fiber of various kinds and grades to which Plaintiff was exposed.

10. Defendants conduct business in the State of New Jersey, and certain Defendants reside or maintain their principal offices and/or principal places of business in the State of New Jersey.

**FIRST COUNT**

11. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

12. Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

13. Defendants were engaged, directly, or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos containing talc and/or other finished and unfinished asbestos-containing talc powder products, and/or raw asbestos fiber of various kinds and grades which Defendants knew or should have foreseen would be used with asbestos-containing products (hereinafter collectively referred to as "Defendants' Products").

14. Defendants, directly or indirectly, caused Defendants' Products to be sold to or used by Plaintiff and/or in close proximity to Plaintiff.

15. Plaintiff was exposed to and came in contact with Defendants' Products. Plaintiff inhaled and/or ingested the asbestos dust and fibers emanating from Defendants' Products.

16. As a direct and proximate result of Plaintiff's inhalation and ingestion of dust particles and fibers from Defendants' Products, Plaintiff developed permanent and disabling personal injuries.

17. During the time that Defendants mined, milled, designed, manufactured, produced processed, compounded, converted, sold, merchandised, distributed, and supplied Defendant's Products, Defendants knew or in the exercise of reasonable care should have known that Defendants' Products were defective, ultra-hazardous, dangerous, and otherwise highly harmful to Plaintiff.

18. Defendants knew or in the exercise of reasonable care should have known that the use of Defendants' Products, would cause asbestos dust and fibers to be released into the air and would create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of Defendants' Products, and to others breathing that air and coming into contact with that dust.

19. Plaintiff did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' Products, or from the inhalation or ingestion of the asbestos dust and fibers.

20. Defendants knew or in the exercise of reasonable care should have known that Plaintiff would come into contact with and be exposed to Defendants' Products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' Products by Plaintiff.

21. Despite the facts as set forth above, Defendants negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and intentionally:

(a) Mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce Defendant's Products which Defendants knew, or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to Plaintiff;

(b) Failed to take reasonable precautions or exercise reasonable care to warn Plaintiff adequately of the risks, dangers and harm to which Plaintiff would be exposed by exposure to, contact with, use and handling of Defendants' Products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(c) Failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, proper equipment and appliances necessary to protect Plaintiff from being injured, poisoned, disabled, killed or otherwise harmed by using, handling, coming into contact with and being exposed to Defendants' Products, or by inhalation or

ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(d) Failed to package their products in a manner that would assure that Plaintiff would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(e) Failed to advise Plaintiff of the necessity to adopt and enforce a safe, sufficient and proper method and plan of using, handling, coming into contact with and being exposed to Defendants' Products so that Plaintiff would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products;

(f) Ignored and/or suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders and other illnesses and diseases to individuals such as Plaintiff and other persons similarly situated who were exposed to Defendants' Products;

(g) Disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(h) Failed to investigate, impose and comply with policies, procedures, standards and regulations as to exposure to asbestos, asbestos fibers, and asbestos dust;

(i) Wrongfully processed, manufactured, packaged, distributed, used, delivered, and sold Defendants' Products for use by Plaintiff, others like her and the general public;

(j) Exposed and continued to expose Plaintiff and other persons similarly situated to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(k) Failed to seek substitute materials in lieu of the use of asbestos;

(l) Failed to provide proper, adequate, correct and appropriate warnings, labels, advice, cautions, instructions, and information as to the use of and consequences of exposure to Defendants' Products, asbestos, asbestos fibers and dusts and failed to use reasonable care as to same;

(m) Failed to provide proper and appropriate warnings and cautions to all users of Defendants' Products, including Plaintiff, of the dangers of asbestos-containing products, fibers and dusts, both known and foreseeable; and

(n) Failed to advise Plaintiff, who Defendants knew, or in the exercise of reasonable care, should have known, had been exposed to, inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products, to cease further uncontrolled or unprotected exposure to Defendants' Products and the inhalation or ingestion of asbestos dust and fibers; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases.

22. Defendants otherwise acted negligently, grossly negligently, maliciously, with willful and wanton disregard, recklessly and with intentional disregard for the welfare of Plaintiff in the mining, milling, designating, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, distributing, or otherwise placing in the stream of commerce Defendants' Products.

23. Defendants acted in a negligent, grossly negligent, malicious, willful and wanton manner, with reckless disregard for the health and welfare of Plaintiff and others similarly situated, and failed to use reasonable care under all of the circumstances.

24. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff developed mesothelioma as a direct and proximate result of said exposure to Defendants' Products. Plaintiff has and continues to endure severe pain and suffering and mental anguish, has been required to expend great sums of money for medical care and treatment related thereto, has been prevented from pursuing normal activities and has been deprived of ordinary pursuits and enjoyments of life. Plaintiff has suffered lost earnings and other pecuniary loss.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SECOND COUNT

25. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

26. Defendants expressly and impliedly warranted that Defendants' Products, which they mined, milled, designed, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use and safe for their intended purposes.

27. Defendants breached said warranties in that Defendants' Products were defective, ultra-hazardous, dangerous, unfit for use, not merchantable and not safe for their intended, ordinary and foreseeable use and purposes.

28. As a direct and proximate result of Defendants' breach of warranties, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## THIRD COUNT

29. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

30. Defendants failed to disclose and intentionally and negligently misrepresented to Plaintiff the health risks created by ordinary use of Defendants' Products.

31. Plaintiff relied upon said representations, and Plaintiff's reliance was foreseeable to Defendants.

32. As a result of Defendants' conduct, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**FOURTH COUNT**

33. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

34. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Plaintiff and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff and other persons similarly situated;

(d) Throughout the many years that Plaintiff and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of Defendants' Products.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers,

workers, bystanders and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

35. As a consequence of the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

**FIFTH COUNT**
**NEW JERSEY PRODUCTS LIABILITY ACT CLAIM**
**(NJSA 2A:58C-1 *et seq.*)**

36. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

37. Defendants are strictly liable to Plaintiffs by reason of the following:

(a) Defendants were engaged in the business of being miners, millers, designers, manufacturers, producers, processors, sellers, suppliers, and distributors of Defendants' Products;

(b) Defendants knew or had reason to know that Plaintiff and other persons similarly situated would be ultimate users or consumers of Defendants' Products or would be exposed to Defendants' Products;

(c) Defendants sold or otherwise placed Defendants' Products into the stream of commerce in a defective condition, unreasonably dangerous to Plaintiff and other persons similarly situated, which were not fit, suitable or safe for their intended purposes and/or reasonably foreseeable uses;

(d) Throughout the many years that Plaintiff and other similarly situated persons were exposed to and used Defendants' Products, Defendants' Products reached the users and consumers, and their household members, without substantial change in the condition in which they were sold;

(e) The ordinary and foreseeable use of Defendants' asbestos-containing products constituted a dangerous and ultra-hazardous activity and created an unreasonable risk of injury to users, bystanders and household members;

(f) Defendants' Products were defective in that they deviated from the design specifications and/or standards set forth by the manufacturer, were incapable of being made safe for their ordinary and intended use and purpose due to their defective design, were defective because they failed to contain adequate warnings, were defectively manufactured as they failed to comply with their own specifications, were defectively designed because Defendants' Products were more dangerous than would be contemplated by an ordinary user, the risks of Defendants' Products outweighed their benefits, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about

the risks, dangers and harm associated with the use of Defendants' Products, and/or failed to give adequate post-sale warnings or instructions.

(g) Defendants' Products were defectively designed because Defendants' Products are more dangerous than would be contemplated by ordinary users, consumers, workers, bystanders and household members, and also because the risks of Defendants' Products outweighed their benefits;

(h) Defendants' Products were defectively manufactured as they failed to comply with their own specifications.

38. As a consequence of the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SIXTH COUNT

39. Plaintiffs reiterate the facts and contentions as set forth above, and repeat them herein.

40. Defendants acted in concert with each other and with other members of the industry through express agreement, implicit agreement, imitative behavior and conscious parallel behavior:

(a) To withhold from users of Defendants' Products, and from persons who Defendants knew or should have known would be exposed to Defendants' Products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(b) To eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust; and

(c) To assure that Defendants' Products became widely used in industries such as personal hygiene, beauty, infant care, and similar industries.

41. Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures and promotion of widespread use of asbestos-containing products would expose persons such as Plaintiff to unreasonable risk of bodily injury.

42. Defendants nevertheless gave substantial assistance and encouragement to each other and to other members of the industry and assisted each other and other members of the industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not subjected to risk of injury; and promoting widespread use of Defendants' Products which Defendants knew would expose Plaintiff to unreasonably risk of bodily injury.

43. As a direct and proximate consequence of the concerted actions of Defendants and other members of the industry, Plaintiff was exposed to and came in contact with Defendants'

Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff was caused to suffer the injuries, expenses and losses, including severed pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## SEVENTH COUNT

44. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

45. The Defendants constitute all known, non-remote producers, designers, manufacturers, suppliers, distributors of the asbestos-containing products which could have caused Plaintiff's injuries.

46. Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to Plaintiff, or otherwise engaged in culpable activity against Plaintiff. The acts and omissions of at least one of the Defendants caused Plaintiff to suffer the injuries, losses and expenses alleged in prior counts of this Complaint.

47. Plaintiff in no respect can be blamed should Plaintiff be unable to establish which of the asbestos-containing products caused the injuries complained of herein.

48. The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective asbestos-containing products could not have

caused Plaintiff's injuries, and failing such proof, Defendants should be held jointly, severally, or alternatively liable for Plaintiff's injuries.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## EIGHTH COUNT

49. Plaintiffs reiterate the facts and contentions as set forth above and repeat them herein.

50. At all times relevant hereto, the Defendants, as a part of their businesses, were engaged, directly, or indirectly, in the mining, milling, designing, manufacturing, producing, processing, compounding, converting, selling, merchandising, supplying, or distributing of asbestos-containing products, and/or asbestos containing talc and/or other finished and unfinished asbestos-containing talc powder products, which Defendants placed into the stream of commerce in a defective, unsafe and inherently dangerous condition in that, among other things, adequate warnings, instructions and precautions were not given to known and foreseeable users and handlers, including Plaintiff, and the products and materials were expected to and did reach such persons, including Plaintiff, without substantial change in the condition in which they were sold.

51. At all times relevant hereto, the asbestos containing products and materials were used and employed for the purposes for which they were mined, processed and manufactured, designed, fashioned, packaged, inspected, tested, sold and intended to be used, and in a manner foreseeable to the Defendants.

52. The injuries and resulting damages to Plaintiff were caused by the defective, unsafe and dangerous condition of the asbestos products and materials which Defendants distributed, supplied, sold, and otherwise placed in the stream of commerce.

53. As a consequence of the Defendants' conduct and//or the defective condition of Defendants' Products, Plaintiff was exposed to and came in contact with Defendants' Products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products. Plaintiff has suffered the injuries, expenses and losses, including severe pain and suffering and mental anguish, as alleged in prior counts of this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

## NINTH COUNT

54. Plaintiff Spouse reiterates the facts and contentions as set forth above and repeats them herein.

55. Plaintiff Spouse has suffered loss of consortium, companionship, services, society and support.

**WHEREFORE**, Plaintiffs demand judgment against Defendants jointly, severally and/or in the alternative for such damages as may be permitted pursuant to the laws of the State of New Jersey, including but not limited to compensatory damages, pecuniary damages, punitive damages, loss of consortium (per quod), pre- and post-judgement interest, and costs of suit, and attorney fees as provided by law.

Plaintiffs hereby incorporate by reference all allegations set forth in the Standard Complaint, as amended, previously served upon all parties and filed with Middlesex County Clerk. Additional copies of the Standard Complaint are available upon written request to Plaintiffs' counsel and a pdf version can be downloaded from the judiciary's website: https://www.njcourts.gov.attorneys/mcl/middlesex/asbestos.html.

In addition, copies of the Mass Tort Asbestos Manual, General Orders and Standing Orders pertaining to Middlesex County asbestos litigation are available from the judiciary's website, or from Special Master Agatha N. Dzikiewicz, Esq., Middlesex County Courthouse, 56 Paterson Street, Chambers 204, New Brunswick, New Jersey 08903, Tel: 732-645-4300 ext. 88211, e-mail – Agatha.Dzikiewicz@njcourts.gov.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury on all issues.

**DEMAND FOR ANSWERS TO INTERROGATORIES**

Plaintiffs demand answers to the Standard Interrogatories pursuant to the Asbestos General Order. Said Standard Interrogatory forms may be obtained online at www.njcourtsonline.com.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to Rule 4:25-4, Erin M. Boyle, Esq. and Joseph J. Mandia, Esq. are hereby designated as trial counsel in this matter.

**CERTIFICATION PURSUANT TO RULE 4:5-1**

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action currently pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I have no knowledge at the time of any non-party who should be joined in the action.

**WEITZ & LUXENBERG, P.C.**
*A New York Professional Corporation*
Attorneys for Plaintiffs

By: ______________________________
Michelle Murtha, Esquire

Dated: November 26, 2024